34994-08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAWSON GROUP, INC.,** | |
| **Plaintiff,** | |
| **v.** | Case No: |
| **SUNAGO SYSTEMS, LLC, PARCELSHIELD LLC, and SCOTT KNIGHT, as an individual.** | |
| **Defendant.** | |

## COMPLAINT

Now comes Dawson Group, Inc. ("Dawson") by and through its undersigned counsel for its causes of action against  Sunago Systems, LLC ("Sunago"), ParcelShield LLC ("ParcelShield"), and Scott Knight ("Knight")(collectively "Defendants") seeking declaratory judgment, injunctive relief and damages against Defendants, and hereby alleges as follows:

### PRELIMINARY STATEMENT

1.      This action arises from a pattern of unlawful behavior by Knight, while hiding behind corporate structures he created to try to shield himself from the liability of his actions, and by the corporations owned and/or controlled by Knight.

2.      This action also arises out of violations by Defendants of the Federal Lanham Act, 15 U.S.C. §1125(a) and the Defend Trade Secrets Act, 18 U.S.C. §1836(b); violations by Defendants of the Illinois Trade Secret Act, 765 ILCS 1065/1 *et seq;* and common law violations

34994-08

related to Defendants' misappropriation of Dawson's trade secrets and highly confidential information as well as Sunago's breach of contract.

3.        To prevent irreparable harm, Dawson seeks injunctive relief barring Defendants using, offering for sale, or selling the software at issue in this Complaint.  Without a preliminary and permanent injunction in place, Dawson will suffer substantial and irreparable harm.

**PARTIES, JURISDICTION AND VENUE**

4.        Dawson is a corporation organized under the laws of Illinois with a principal place of business located at 2220 State Road 157 in Glen Carbon, Illinois.

5.        Dawson is a small family logistics and transportation services business, namely providing emergency response logistics, the foundation of which is sophisticated tracking of its customers' shipments. Dawson's services include, without limitation, receiving its customers' shipping information, using software to track its customers' shipping information and interacting with third parties to ensure timely, convenient delivery of time and life-critical medications to its customers' patients.

6.        Sunago is a limited liability company organized under the laws of Oregon with a principal place of business at 15635 S.E. 114th  Street, Clackamas, Oregon.  Sunago is in the business of developing and improving software programs for its customers.

7.        ParcelShield is a limited liability company organized under the laws of Oregon with a mailing address of PO BOX 3583, Gresham, Oregon 97030. ParcelShield is in the business of marketing and selling the misappropriated Software at issue in this Complaint.

8.        Scott Knight is an individual that resides in Oregon and has a listed address of 30709 SE Dodge Park Blvd, Gresham, Oregon 97030.  Scott Knight is listed as a Manager and

34994-08

Registered Agent for ParcelShield with the Oregon Secretary of State.  Scott Knight is listed as a

Member and Registered Agent for Sunago with the Oregon Secretary of State.

9.     This Court may exercise personal jurisdiction over Defendants under the Illinois

Long-Arm Statute, because the Defendants have transacted business in Illinois, entered into

contracts and promises substantially connected with this State, and caused an injury in this

State.

10.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332

because the amount in controversy exceeds the sum or value of $75,000 exclusive of interest

and costs and complete diversity exists between the Plaintiff and the Defendants.

11.     Venue is proper in this Court under  28 U.S.C. §1391(b)(2) in that a substantial

part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is

also proper in this judicial district under 28 U.S.C. §1391(d) because the Defendants have

extensive contacts with, and conduct business within, the State of Illinois and this judicial district.

## THE NON-DISCLOSURE AGREEMENT

12.     Dawson is the owner of proprietary information relating to the conduct of its

business including, without limitation, pricing information, financial statements, cost and

expense data, payor contracts, marketing and customer data, technical and non-technical data,

formulae, patterns, compilations, computer programs, software, licenses, drawings, processes,

procedures, methods, techniques, ideas, supplier data, source code, reference manuals, software

updates, improvements, enhancements and releases, computer information, object code,

schematic drawings, and research and development information and data ("Dawson Proprietary

Information").

4825-4494-8786.1

13.    On June 22, 2007, prior to Dawson sharing any confidential or proprietary information with Sunago, Dawson and Sunago entered into the Non-Disclosure Agreement attached as **Exhibit A** ("NDA").

14.    The NDA defines "Proprietary Information" as "all trade secrets, confidential information and proprietary information" that either party discloses to the other, "including, without limitation, pricing information, financial statements, cost and expense data, payor contracts, marketing and customer data, technical and non-technical data, formulae, patterns, compilations, computer programs, software, licenses, drawings, processes, methods, techniques, ideas, supplier data, source code, reference manuals, software updates, improvements, enhancements and releases, computer information, object code, schematic drawings, and research and development information and data."

15.    The NDA requires that "The Recipient shall hold in confidence, and shall not disclose to any person outside its organization, the Proprietary Information of the Discloser."

16.    The NDA requires that "the Discloser is and shall remain the exclusive owner of the Discloser's Proprietary Information and all patent, copyright, trade secret, trademark and other intellectual property rights therein."

17.    The NDA further states that the parties "agree that damages at law will be insufficient to remedy an aggrieved party hereunder if any term of this Agreement is violated and that an aggrieved party would suffer irreparable damages as a result.  Accordingly, an aggrieved party hereunder shall be entitled to injunctive relief (without necessity to post a bond), including, without limitation, its reasonable attorney fees and court costs."

34994-08

18.     The NDA remains in effect "until either party herein notifies the other in writing that this Agreement is terminated."  Thereafter, the provisions of the NDA remain in effect for two years.

19.     The NDA has not been terminated by either Dawson or Sunago, and its provisions remain in effect and are binding on Sunago.

20.     Dawson spent considerable time, effort and money developing and refining the Dawson Proprietary Information and in implementing the processes and procedures that are encompassed by the Dawson Proprietary Information. Dawson's development and use of the Dawson Proprietary Information has been, and continues to be, important to the ongoing success of its business.

**THE ORAL CONTRACT**

21.     With the terms of the NDA still in effect, in January 2012, Dawson entered into an oral contract with Sunago to develop a cloud-based shipping analytics and auditing tool to provide the visibility, accountability and control needed to achieve total parcel spend optimization for Dawson's customers.  Dawson specifically required the following functionality in the design of the Software to be included, but not limited to: (1) it must identify Dawson's customers' missed delivery and undeliverable shipments; (2) it must give Dawson and its customers immediate access to high level information regarding critical metrics; (3) it must show carrier performance on a map interface to reflect impacts on cost and service so that Dawson and its customers would know where delivery commitments are not being met; (4) it must allow Dawson and its customers to receive actionable reports; and (5) it must provide a cost savings

34994-08

analysis capability.   The software described in this Paragraph 21 shall be referred to as the "Software".

22.      In order to develop the Software, Dawson agreed, subject to the terms of the NDA, to share its Dawson Proprietary Information, only as needed, on the condition that the Software only be used in connection with Dawson's business.  Moreover, Dawson agreed to pay Sunago to develop the Software on the condition that the Software would be owned by Dawson and that the development services would be performed on a work-for-hire basis.  In addition, Sunago agreed to deliver the source code of the Software to Dawson.   The oral contract described in Paragraphs 21 and 22 shall be referred to herein as the "Contract".

23.      Dawson translated its ideas of functionality for the software it was seeking to develop and, with the assistance of Sunago, fixed those ideas into a tangible expression in the form of the Software.

24.      Dawson satisfied all of its obligations under the Contract.

25.      Sunago developed the Software and embodied substantial portions of the Dawson Proprietary Information therein.

26.      After the Software was developed, Dawson received access to the online version of the Software.

27.      Dawson continued to access and use the online version of the Software from 2012 through approximately November 2015.    During this period, Dawson paid Sunago maintenance and hosting fees for the Software and allowed Sunago to maintain the sole copy of the source code on Sunago's servers.

28.     During this period of time, Dawson placed all its customers on the Software and used the Software as a primary tool for the operation of its business.

## SUNAGO'S EXTORTION TACTICS

29.     In November 2015, the owner of Sunago, Scott Knight, attempted to extort Dawson by asserting that Sunago owned the Software and that unless Dawson paid Sunago a "non-exclusive license fee" to the Software, in the amount of  $665,000 up front plus an ongoing royalty fee, Sunago would shut down Dawson's access to the Software.

30.     Dawson refused to pay the extortion fee and access to the Software was shut off on December 31, 2015.

## PARCELSHIELD BEGINS TO OFFER THE SOFTWARE

31.     On February 25, 2016, Scott Knight formed ParcelShield.

32.     Scott Knight is listed as a Manager and Registered Agent for ParcelShield with the Oregon Secretary of State.

33.     ParcelShield has a website located at www.parcelview.com offering the Software and the same emergency response services as Dawson offers to third parties.  The website expressly emphasizes the functional characteristics of the Software.  A copy of relevant pages from the ParcelShield website is attached as **Exhibit B**.

34.     Dawson recently learned of ParcelShield and its website.

35.     Dawson also learned that ParcelShield is using Dawson's Proprietary Information to steal Dawson's customers.

36.     Specifically, Dawson has learned that Scott Knight and ParcelShield have taken Dawson's customer list as well its weekly volumes for these customers and are in the process of

developing a plan to steal each of these customers through use of the Dawson's Proprietary Information that is unlawfully in their possession.

37.     In an email dated February 22, 2016, days before formally registering ParcelShield as a limited liability company, Scott Knight wrote an email entitled "Top Target Accounts" to an individual that he planned to use as a salesperson for ParcelShield that included a listing of Dawson's customers and their weekly volumes, which stated in relevant part, "Below is a list of Dawson accounts and their corresponding weekly volumes.  I want you to spend some time and put together a plan for each one.  I don't think any of these are so tied to Dawson that we can't get them, and they would cripple GA by leaving them with low paying, high touch customers. Get this to me as soon as you can, but I want you to put a lot of thought into it and treat it like your sales plan for the next 3 months."  The term GA in this email refers to "Guardian Angel", which is the trademark used by Dawson to market the Software.

**COUNT I: DECLARATORY JUDGMENT, 28 U.S.C. §2201**

38.     Dawson incorporates by reference the allegations in Paragraphs 1-37 above.

39.     There is a real, immediate, substantial and justiciable controversy over whether Dawson is the copyright owner of the Software based on the terms of the Contract and the NDA.

40.     There is a real, immediate, substantial and justiciable controversy over whether Dawson is a joint author of the Software and, as such, whether Dawson possesses the rights of a joint author, including the right to possess and make copies of the Software.

41.     There is a real, immediate, substantial and justiciable controversy over whether Dawson has a right to possess and use the Software by virtue of the Contract and the NDA.

34994-08

42.     There is a real, immediate, substantial and justiciable controversy over whether Defendants have the right to copy and commercially exploit the Software that embodies the Dawson Proprietary Information, without permission from Dawson.

43.     There is a real, immediate, substantial and justiciable controversy over whether Defendants can continue to interfere with, and deprive, Dawson of its possession of the Software.

44.     Dawson requests a judicial declaration that it is the owner of the copyright on the Software pursuant to the Contract or the NDA.

45.     Dawson requests a judicial declaration that it is the owner of the Software and the Dawson Proprietary Information.

46.     Dawson requests a judicial declaration that Defendants have improperly misappropriated the Dawson Proprietary Information, and that Defendants are not entitled to market or sell the Dawson Proprietary Information through public sales of the Software.

47.     Dawson requests a judicial declaration that Defendants are not entitled to interfere with and/or deprive Dawson of its lawful possession and use of the Software.

48.     Dawson will be greatly injured and irreparably harmed unless this Court makes such judicial declarations.  Dawson has no adequate remedy at law.

### COUNT II: BREACH OF NDA
### (SUNAGO)

49.     Dawson incorporates by reference the allegations in Paragraphs 1-48 above.

50.     The NDA was offered to Sunago by Dawson, accepted by Sunago, and signed by both parties on about June 22, 2007.

34994-08

51.     By signing the NDA, Sunago agreed that all Dawson Proprietary Information shall remain the exclusive property of Dawson.

52.     In consideration of the NDA, Dawson provided Dawson Proprietary Information to Sunago as defined in the NDA, and Sunago agreed to hold all Dawson Proprietary Information in confidence, and not disclose it to any person outside of Sunago.

53.     Dawson performed all of its obligations under the NDA by providing Sunago with Dawson Proprietary Information, including all Dawson Proprietary Information needed to jointly develop the Software.

54.     By failing to maintain the confidentiality of the Dawson Proprietary Information, Sugano breached the NDA.

55.     By providing Dawson Proprietary Information to ParcelShield, Sunago breached the NDA.

56.     By disclosing the Dawson Proprietary Information outside of Sunago, Sunago breached the NDA.

57.     By converting the Dawson Proprietary Information and the Software for its own use and purposes, Sunago breached the NDA.

58.     Sunago's breaches of the NDA were wanton and willful.

59.     Dawson has been damaged by Sunago's breaches of the NDA.

60.     Sunago has been unjustly enriched by its breaches of the NDA.

## COUNT III: BREACH OF CONTRACT
### (SUNAGO)

61.     Dawson incorporates by reference the allegations in Paragraphs 1-60 above.

34994-08

62.     Separate from the terms of the NDA, Dawson and Sunago entered into the Contract.

63.     Dawson performed all of its obligations to Sunago under the Contract.

64.     By failing to deliver the source code of the Software to Dawson and shutting down Dawson's access to the online version of the Software, Sunago breached the Contract and forced Dawson to cover by developing another version of software at its own expense.

65.     By failing to use the Dawson Proprietary Information only as needed to fulfill its contractual obligations to Dawson, Sunago breached  the Contract.

66.     By demanding additional payments from Dawson beyond what was agreed to, Sunago breached the Contract.

67.     By making the Software based on the Dawson Proprietary Information available for marketing and selling by ParcelShield to others, Sunago breached the Contract.

68.     By disclosing the Dawson Proprietary Information to ParcelShield, Sunago breached the Contract.

69.     Sunago's breaches of the Contract were wanton and willful.

70.     Dawson has been damaged by Sunago's breaches of the Contract.

71.     Sunago has been unjustly enriched by its breaches of the Contract.

**COUNT IV: FEDERAL UNFAIR COMPETITION, 15 U.S.C. 1125(a)
(PARCELSHIELD)**

72.     Dawson incorporates by reference the allegations in Paragraphs 1-71 above.

73.     Dawson is the sole creator and contributor of the Dawson Proprietary Information that is embodied in the Software.

34994-08

74.     Prior to entering the NDA and the Contract with Sunago, substantial elements of the Dawson Proprietary Information were known only to Dawson and were not available to the public. These elements included, without limitation, information concerning Dawson's customers; shipment tracking and management; emergency response methodology, processes and communication to effect timely, convenient delivery of time and life-critical medications to its customers' patients.

75.     ParcelShield has been marketing and selling the Software embodying the Dawson Proprietary Information to members of the public nationwide, in interstate commerce, including, without limitation, Dawson's customers.

76.     Without authorization from Dawson, ParcelShield is using misappropriated Dawson Proprietary Information, including confidential information about Dawson's customers and their use of the Software, to try to steal Dawson's customers.

77.     By marketing the Software based on the Dawson Proprietary Information as its own creation, ParcelShield has falsely designated itself as the origin of the Dawson Proprietary Information embodied in the Software.  Specifically, ParcelShield has created, in the minds of ordinary purchasers, the false impression that ParcelShield, and not Dawson, is the origin and source of the Dawson Proprietary Information.

78.     By the aforementioned conduct, ParcelShield has damaged Dawson and ParcelShield has been unjustly enriched.

79.     ParcelShield's acts of unfair competition complained of herein were, at all times, wanton and willful.

### COUNT V: STATE UNFAIR COMPETION, 815 ILCS 505/1 ET. SEQ.
### (SUNAGO )

80.     Dawson incorporates by reference the allegations in Paragraphs 1-79 above.

4825-4494-8786.1

34994-08

81.     Sunago falsely represented to Dawson that it would use the Dawson Proprietary Information only to develop the Software for the possession and use by Dawson.

82.     Sunago falsely represented that it would hold the Dawson Proprietary Information in confidence, and would not disclose Dawson Proprietary Information to any person outside of Sunago.

83.     Sunago falsely represented that it would honor Dawson's exclusive ownership of the Dawson Proprietary Information.

84.     In reliance on Sunago's misrepresentations, Dawson provided Dawson Proprietary Information to Sunago.

85.     In reliance on Sunago's misrepresentations, Dawson paid Sunago to develop the Software for the exclusive use and possession by Dawson.

86.     Instead of holding the Dawson Proprietary Information in confidence, Sunago, with the intent of violating the NDA and Contract, provided the Software to ParcelShield.

87.     Dawson was misled and deceived by Sunago's misrepresentations.

88.     Dawson was damaged by Sunago's misrepresentations and Sunago was unjustly enriched.

## COUNT VI: CONVERSION
## (SUNAGO AND KNIGHT)

89.     Dawson incorporates by reference the allegations in Paragraphs 1-88 above.

90.     By virtue of the Contract and the NDA, Dawson owns the right to posses and use the Software, including its source code, in the conduct of its business.

34994-08

91.     Knight exercised his ownership and control over Sunago and ParcelShield to intentionally interfere with and deprive Dawson of its right to own and use the source code and Software in the conduct of its business.

92.     Specifically, Knight induced Sunago to refuse to deliver the source code for the Software to Dawson and Sunago did refuse to deliver the source code for the Software to Dawson.

93.     The taking and refusal to deliver the source code has, and continues to deprive Dawson of the possession and use of the Software.

94.     The taking and refusal to deliver the source code has damaged Dawson.

### COUNT VII: TORTIOUS INTERFERENCE WITH CONTRACT
### (KNIGHT)

95.     Dawson incorporates by reference the allegations in Paragraphs 1-94 above.

96.     The NDA constitutes a valid and enforceable contract between Dawson and Sunago.

97.     Knight, by exercising his control over Sunago, intentionally and unjustifiably induced Sunago to breach the NDA and Contract.

98.     There was, in fact, a consequent breach of the NDA caused by Knight's wrongful conduct by providing the Software and Dawson Proprietary Information to ParcelShield in direct violation of the NDA and Contract.

99.     Dawson has been damaged by Knight's wrongful and tortious conduct.

### COUNT VIII: FEDERAL TRADE SECRET MISAPPROPRIATION
### (KNIGHT)

100.    Dawson incorporates by reference the allegations in Paragraphs 1-99 above.

34994-08

101.     This action is brought under the Defend Trade Secrets Act, 18 USC 1836(b).

102.     Substantial elements of the Dawson Proprietary Information were known only to Dawson and were not available to the public. These elements included, without limitation, information concerning Dawson's customers and their specific needs..

103.     By virtue of the NDA, Dawson has taken reasonable measures to protect and maintain the confidentiality of the Dawson Proprietary Information.

104.     Dawson has derived economic value by taking reasonable measures to prevent the Dawson Proprietary Information from becoming available to the public, and by its not being readily ascertainable through proper means by others who could obtain economic value from its disclosure.

105.     The Dawson Proprietary Information is related to products and services by Dawson that are used in interstate commerce.

106.     Knight misappropriated the Dawson Proprietary Information by inducing and causing Sunago to breach the NDA and the Contract with Dawson, by disclosing the Dawson Proprietary Information to ParcelShield, and by causing ParcelShield to disclose and use the Dawson Proprietary Information to Dawson's detriment.

107.     Dawson has been damaged by Knight's misappropriation of the Dawson Proprietary Information.

**WHEREFORE**, Dawson prays:

1.     That Defendants, and all persons acting in concert or participating with Defendants, be preliminarily and permanently enjoined from marketing and selling the Software and any variations thereof that embody Dawson Proprietary Information.

4825-4494-8786.1

34994-08

2.      That Defendants be preliminarily and permanently enjoined from interfering with and/or hindering Dawson's rightful possession and use of the Software.

3.      That Defendants be ordered to furnish Dawson with all copies of the Software and any variations that include Dawson Proprietary Information.

4.      That Dawson be declared entitled to possess and use the Software without hindrance or interference from Defendants.

5.      That Defendants be ordered to pay compensatory damages to Dawson of a) all amounts paid to date from Dawson to Sunago, and b) not less than $250,000 for their unlawful misappropriation of Dawson's ownership rights, breach of contract, and conversion of Dawson's right to possess and use the Software.

6.      That Defendants be ordered to pay Dawson compensatory damages equal to all profits, damages suffered by Dawson, and the reasonable costs and attorney's fees of bringing and maintaining this action, including without limitation the damages specified in 15 U.S.C. 117(a), for the acts of unfair competition complained of herein, and that all such damages be trebled pursuant to 15 USC 1117(a);

7.      That Defendants be ordered to compensate Dawson for loss of trade secret, unjust enrichment, and reasonable royalty for the use of Dawson Proprietary Information.

8.      That Knight be ordered to pay Dawson punitive damages of not less than one million dollars for his willful and unlawful conversion of Dawson's right to possess and use the Software in the conduct of its business, and his tortious interference with Dawson's NDA and Contract with Sunago; and

34994-08

9.      Such other and further relief at law and in equity, as this Court deems appropriate

in the interests of justice.

**Jury Demand**

Dawson hereby demands trial by jury on all matters alleged herein.

Dated: June 8, 2016

***DAWSON GROUP, INC., Plaintiff***

By:_____/s/ Michael Schroer_____
LEWIS BRISBOIS BISGAARD & SMITH LLP
Michael Schroer, #6285139
Mark Twain Plaza II, Suite 300
103 Vandalia St.
Edwardsville, IL 62025
618.307.7290 Main
618.692.6099 Fax

/s/Bryan P. Sugar
Bryan P. Sugar
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 West Adams Street, Suite 300
Chicago, IL 60661
Telephone: 312-345-1718

4825-4494-8786.1                          Page 17 of 18

34994-08

## **CERTIFICATE OF SERVICE**

The undersigned certified that on **June 9, 2016,** the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


_____/s/ Michael Schroer_____
LEWIS BRISBOIS BISGAARD & SMITH LLP